UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL O. SMITH, #162081,

                      Petitioner,                     Case Number 2:11-cv-12636
                                                    Honorable Victoria A. Roberts

v.

GREG MCQUIGGIN, Warden,

                      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS [Dkt. 13]**

This matter is before the Court on Petitioner Nathaniel O. Smith's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner pled no contest in the Wayne Circuit Court to one count of second-degree murder, MICH. COMP. LAWS § 750.317, and one count of felony-firearm. MICH. COMP. LAWS § 750.227b. He was sentenced on January 18, 2007, to 23-to-50 years for the murder conviction and a consecutive two-year term for the firearm conviction. The petition enumerates six claims: (1) Petitioner's plea was involuntary; (2) the prosecutor suppressed evidence that was favorable to Petitioner; (3) trial and appellate counsel were ineffective; (4) the state district and circuit courts erred in allowing Petitioner to face charges of first-degree murder; (5) Petitioner is actually innocent; and (6) Petitioner has shown good cause and actual prejudice to excuse any procedural default. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal informa pauperis.

## I. Facts and Procedural History

The charges against Petitioner arose after he and his co-defendant, Charles Womack, got into a dispute with another customer, Hemant Persaud, in a gas station in Detroit. The incident began after angry words were exchanged about whether Persaud was Arabic. The dispute quickly escalated to the point where Petitioner pulled out a firearm, held it against Persaud's head, and shot him. Petitioner then emptied Persaud's pockets and fled the scene. The entire incident was captured and recorded on the gas station's video surveillance camera. The only eyewitness was the station attendant, who saw the shooting from behind a bullet-proof partition.

After his preliminary examination, Petitioner was bound-over for trial on charges of first-degree felony murder, armed robbery, felon in possession of a firearm, and felony firearm. The district court did not find probable cause to bind him over on the charges of first-degree premeditated murder.

The prosecutor file a motion in the state circuit court to reinstate the first-degree premeditated murder count. The trial court granted the motion and reinstated the first-degree premeditated murder charge.

On January 18, 2007, Petitioner pled no contest to one count of second-degree murder and one count of felony firearm. In exchange for his plea, the prosecutor agreed to dismiss charges of first-degree premeditated murder, first-degree felony murder, armed robbery, felon in possession, and the notice to enhance his sentence as a fourth-time habitual felony offender. The parties also agreed to a prison sentence of 23-to-50 years for the murder conviction and a two year consecutive sentence for the felony-firearm. Following a plea colloquy, the trial court found Petitioner's plea to have been made "accurately, understandingly and voluntarily." Plea Tr. 11.

On February 2, 2007, Petitioner was sentenced in accordance with the plea agreement to 23-to-50 years for the murder conviction and to a consecutive two year prison sentence for the felony firearm.

On August 1, 2007, Petitioner filed a motion to withdraw his plea. Petitioner's motion asserted that he was entitled to withdraw his plea because: (1) it was coerced by the trial court reinstating the first-degree premeditated murder charge; (2) Petitioner acted in self-defense, which was apparent from the video tape of the incident; and (3) his plea was neither understanding nor voluntary. The trial court denied the motion. Tr. 9/7/07, p 8.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

> I. The trial court erred when it denied Petitioner's motion to withdraw his plea as his plea was coerced by the trial court's decision to reinstate the first-degree murder charge, which had not been bound over from district court.

> II. The trial court erred when it denied Petitioner's motion to withdraw his plea as he has a valid defense to the charges against him, supported by a video tape of the incident.

The Michigan Court of Appeals denied Petitioner's application for "lack of merit in the grounds presented." *People v. Smith*, No. 283435 (Mich. Ct. App. March 7, 2008). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, raising the same claims, but the court denied leave to appeal. *People v. Smith*, No. 136122 (Mich. Sup. Ct. July 29, 2008).

On January 9, 2009, Petitioner filed a motion for relief from judgment in the trial court, raising the following claims:

> I. Petitioner was denied the effective assistance of counsel on appeal.

> A. Appellate counsel failed to raise the claim that trial counsel failed to object to the People's motion to amend the Information to add the first-degree premeditated

murder charge, and further failed to object when the trial court did not articulate, on the record, or in the order, the basis used to determine that the district court had abused its discretion in refusing to bind over on that charge.

B. Appellate counsel failed to raise the claim that trial counsel failed to seek a continuance, or remove himself from Petitioner's representation after the amendment of the Information because counsel was unprepared to move forward, and informed Petitioner that he was unable to win the case with the new charge, leaving Petitioner with a Hobson's choice of losing at trial with unprepared counsel and receiving a heavier sentence, or taking a plea to a lesser sentence for a crime for which he is not guilty.

On December 7, 2009, the trial court issued an opinion and order denying Petitioner's motion for relief from judgment. Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, but it was denied "for failure to establish entitlement to relief under MICH. CT. R. 6.508(D)." *People v. Smith*, No. 296120(Mich. Ct. App. June 9, 2010). The Michigan Supreme Court denied Petitioner's application for leave to appeal with citation to the same court rule. *People v. Smith*, No. 141386 (Mich. Sup. Ct. February 7, 2011).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have already been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

Petitioner's various legal claims arise from a discrete set of factual allegations. Petitioner asserts that when the trial court reinstated the premeditated first-degree murder charge, it coerced him to accept the plea bargain. He adds that his defense counsel was not prepared to defend against the reinstated charge, and in fact, that the surveillance videotape suppressed by the prosecutor shows that he acted in self defense. From this set of allegations, Petitioner claims that his plea was involuntary, he was denied the effective assistance of trial and appellate counsel, the prosecutor committed misconduct, the state court's abused their discretion, and that he is actually innocent. None of the claims has merit.

### A. Voluntariness of Plea

"A plea of guilty [or no contest] is more than a confession which admits that the accused did

various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Due to the impact of such a plea on a defendant's constitutional rights, a federal court on habeas corpus review may only overturn a conviction based upon a guilty plea if it is found that the plea violated a petitioner's constitutional right to due process. *Brady v. United States*, 397 U.S. 742, 747 (1970).

A plea of guilty or no contest is invalid unless it is entered by a defendant knowingly, intelligently and voluntarily, without coercion. *Bousley v. United States*, 523 U.S. 614, 618 (1998); *Brady v. United States*, supra at 747; *Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004), reversed in part on other grounds, 545 U.S. 175 (2005). In order to withstand a post-conviction challenge to the voluntariness of the plea, the record must be clear as to the voluntariness. *Boykin v. Alabama*, supra at 242.

In a federal habeas corpus proceeding in which a petitioner challenges the validity of a guilty plea, it is the duty of the respondent to demonstrate that the guilty plea was entered knowingly, intelligently and voluntarily, which is typically accomplished by submission of a presumptively correct plea proceeding transcript. *Stumpf v. Mitchell*, supra at 600, citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The totality of the circumstances surrounding the entry of a plea must show that the plea was not coerced by threats or misrepresentations and that the defendant was informed of all the direct consequences of the plea. *Brady v. United States*, supra at 755. A ruling by a state court upholding the validity of the guilty plea is presumed correct, unless there is a showing that the plea proceeding transcript is somehow inadequate to demonstrate that the plea was entered knowingly, intelligently and voluntarily. *Stumpf v. Mitchell*, supra at 600, citing *Garcia*, supra at 326-27.

The record of the plea colloquy here shows that Petitioner's no contest plea was knowing, intelligent and voluntary. The complete plea agreement was placed on the record and Petitioner said that he wanted to plead no contest. Plea Tr. 3-7. Petitioner also signed a Settlement Offer and Notice of Acceptance, indicating his acceptance of the plea. Petitioner was informed of the exact sentence he would receive in exchange for his plea. Petitioner was asked if he was satisfied with counsel and Petitioner replied, "Yes, sir." Id. 4. Petitioner indicated his understanding of the plea bargain, including the sentence agreement. When asked if he was pleading voluntarily and of his own free will, Petitioner replied, "Yes, sir." Id. 9. Petitioner denied that anyone had threatened or coerced him into accepting the plea bargain. The court also specifically informed Petitioner about the various rights that he would be giving up by pleading guilty. When asked if he understood his rights, Petitioner replied, "Yes, sir." Id. 7-10. The court accepted Petitioner's plea, finding it to have been made accurately, understandingly, and voluntarily. Id. 10-11. The record of the plea hearing there supports the trial court's determination that it was validly entered. Petitioner has completely failed to show how the plea proceeding transcript is somehow inadequate.

Petitioner's claim that the prosecutor withheld the surveillance video tape or that it somehow renders his plea involuntary or proves his actual innocence is unpersuasive. The existence of the video tape was a central feature of the case against him. It was mentioned by both parties during the preliminary examination, Tr. 9/18/06, 27, 47, and at the sentencing hearing. Sent. Tr. 4. The prosecutor stated the following regarding the tape during the hearing on Petitioner's motion to withdraw his plea:

> I set it up with [Petitioner's trial counsel] to have the defendant come in and view the video tape. He viewed the video tape. He sat there and looked at it. He's a habitual fourth. That he reviewed that. . . . What occurred was there was a clerk in the store, it was a party store. The two men walk in. The complainant is in the store.

The complainant I believe the two men started saying things to him about being an Arab, and he says, "No, I'm not Arab," and then men start fighting, not fighting but verbally fighting. And then at that point the complainant put his arm out. The defendant came back. He pulled a gun from his waistband. The other man, Mr. Womack, patted him down as Mr. Smith is holding the gun to him. That at that point Mr. Womack leaves the store. Mister - I cannot remember the complainant's name, but he grabbed his arm trying to get the gun from him. That then at that point he turns toward the door. He was shot one time contact wound to the head by Mr. Smith. That after he goes down Mr. Smith then ran his pockets looking from more money. There was some money, a cell phone and jewelry missing from the body of the complainant. That he couldn't get out of the door because the cashier, the clerk he had locked the door.

Tr. 9/7/07, 5-6.

Although Petitioner had his own interpretation of what it showed, at the hearing he did not dispute that he in fact viewed the tape with his trial counsel. Accordingly, there is nothing to Petitioner's claim that the prosecutor withheld the tape or that his counsel was ineffective in failing to use it to form a defense. Based on the record before the Court and in light of the proper plea colloquy, Petitioner has not shown that the videotape in any way rendered his plea invalid.

### C. Ineffective Assistance of Trial Counsel

Petitioner's claim of ineffective assistance of counsel is equally unpersuasive. The United States Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a guilty or no contest plea on the ground that he was denied the effective assistance of counsel. First, the Petitioner must establish that "'counsel's representation fell below an objective standard of reasonableness.'" *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Second, the Petitioner must demonstrate that counsel's performance resulted in prejudice, i.e., "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

-9-

With respect to the fact that Petitioner's first-degree premeditated charge was reinstated, contrary to Petitioner's claim, defense counsel did object to the prosecution's motion to amend the Information at the motion hearing held on November 10, 2006. The motion hearing transcript reveals that defense counsel vigorously argued that the state district court did not abuse its discretion in not binding Petitioner over on first-degree premeditated murder.[1] That the trial court later ruled against Petitioner does not mandate a finding of deficient performance.

Petitioner does not point to any evidence that defense counsel was unprepared for trial after the prosecutor's motion was granted. Petitioner ignores the fact that he was originally bound-over for trial on first-degree felony murder charges. He and his counsel knew, whether the first-degree premeditated murder charge was reinstated or not, that he faced mandatory life imprisonment if convicted as charged. While the addition of a premeditated murder charge added another theory of guilt, it did not increase Petitioner's exposure or in any way require substantial additional preparation. As the trial court noted in denying Petitioner's motion for relief from judgment, "there is absolutely no evidence defense counsel was unprepared for what was an amended charge, not a new charge and based on the same facts." Trial Court Opinion 12/7/09, 3, n.1. The case here was factually straight-forward: a videotape depicted the incident, and the only eyewitness was the clerk. Petitioner has failed to show how the reinstatement of the premeditated murder charge adversely affected his counsel's performance. Nor has he shown that had the reinstatement not occurred that there is a reasonable probability that he would not have accepted the plea deal.

---

[1]The state court's act of reinstating the charges itself did not implicate Petitioner's federal rights. *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578-79 (E.D. Mich. 2004) (denying habeas relief on a state prisoner's claim that there was insufficient evidence to bind him over for trial); see also *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (ruling that habeas relief is not available for a violation of state law).

**D. Ineffective Assistance of Appellate Counsel**

Petitioner asserts that his appellate counsel was ineffective for failing to raise a challenge to his trial counsel's effectiveness on direct appeal. Counsel's failure to raise an issue on appeal constitutes ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *See Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005). Therefore, failing to raise a meritless claim that has no chance of succeeding does not constitute ineffective assistance of appellate counsel. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Having determined that Petitioner's ineffective assistance of trial claim lacks merit, it follows that appellate counsel's failure to raise the issue was neither unreasonable nor prejudicial, and therefore, does not satisfy the requirements under *Strickland*.

**E. Actual Innocence**

Petitioner claims that the videotape shows that he is innocent. Claims of actual innocence based on newly-discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the United States Supreme Court declined to answer the question left open in Herrera – whether a habeas petitioner may bring a freestanding claim of actual innocence. See *House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

-11-

Citing *Herrera* and *House*, the United States Court of Appeals for the Sixth Circuit ruled that a free-standing claim of actual innocence based upon newly discovered evidence does not warrant federal habeas relief. See *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007). Consequently, Petitioner's assertion that the state courts erred in denying him an evidentiary hearing based upon newly-discovered evidence or that he is entitled to habeas relief on his claim that the videotape shows him to be innocent fails to state a claim upon which federal habeas relief may be granted.

### F. Evidentiary Hearing

Petitioner requests an evidentiary hearing to support his claims. In *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), the Supreme Court held that a federal court's review under 28 U.S.C. § 2254(d)(1)—whether the state court determination was contrary to or an unreasonable application of established federal law—must be confined to the record that was before the state court. *See Pinholster*, 131 S. Ct. at 1398. The *Pinholster* Court specifically found that the district court should not have held an evidentiary hearing regarding Pinholster's claims until after the Court determined that the petition survived review under § 2254(d)(1). In this case, Petitioner's claims do not survive § 2254(d)(1), and therefore no evidentiary hearing is warranted.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted; reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court also denies Petitioner permission to proceed on appeal in forma pauperis; an appeal could not be taken in good faith.

Earlier, Petitioner filed an application to proceed in forma pauperis in connection with denial of his motion to expend the record. The request is denied as well.

### V. Conclusion

For the foregoing reasons:

(1)     The petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**;

(2)     A certificate of appealability is **DENIED**; and

(3)     Permission to proceed on appeal in forma pauperis is **DENIED**.

**IT IS ORDERED**.

  _/s/ Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated:  July 11, 2013

The undersigned certifies that a copy of this document was served on the attorneys of record and Nathaniel Smith by electronic means or U.S. Mail on July 11, 2013.

S/Linda Vertriest
Deputy Clerk